**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| *In re:* § | | |
| § | | |
| **RLI SOLUTIONS COMPANY** § | | **CASE NO. 22-21375-TPA** |
| § | | |
| **Debtor,** § | | **Chapter 11** |
| § | | |
| **NORMAN LANE,** § | | |
| § | | |
| **Movant,** § | | |
| § | | |
| vs. § | | |
| § | | |
| **RLI SOLUTIONS COMPANY,** § | | |
| § | | |
| **Respondent.** § | | Document No. |

**MOTION OF NORMAN LANE FOR RELIEF FROM THE
<u>AUTOMATIC STAY AND OTHER RELIEF</u>**

Comes now the Movant, Norman Lane, by David M. Jecklin, his attorney, pursuant to 11 U.S.C. § 362(d), and Rule 4001(a), Fed.R.Bankr.P., and moves the Court for the entry of an order granting it relief from the automatic stay provided by II U.S.C. § 362(a) and other relief, and in support thereof, provides:

**<u>JURISDICTION AND VENUE</u>**

(1)    This Court has jurisdiction with respect to this motion under and pursuant to 11 U.S.C. § 362(d), 28 U.S.C. § 157, and 28 U.S.C. § 1334.

(2)    This motion is a matter within the scope of Rule 4001 of the Federal Rules of Bankruptcy Procedure.

(3)    This motion is a core proceeding properly heard by this Court under and pursuant to 28 U.S.C. § 157(b)(2).

(4)    Venue with respect to this motion is proper in this district under and pursuant to 28 U.S.C. § 1409(a).

**Procedural Matters**

(5) On July 17, 2022, ("**Petition Date**"), RLI Solutions Company, a West Virginia corporation ("**Debtor**"), with its principal office address at 339 Wilsonburg Road, Clarksburg, WV 26301 voluntarily commenced this case and became a debtor in bankruptcy.

(6) As of the filing of this motion, the Debtor remains in possession of its assets.

**TRANSACTION HISTORY**

(7) On January 29, 2021, the Debtor, Lane, and Christopher Lane (Chris Lane) entered a Stock Purchase Agreement (Agreement) in which Chris Lane purchased from Lane, his 5,667 shares of non-voting capital stock in the Debtor and 50 share of voting capital stock in the Debtor for $10,869,110 (the Purchase). See Exhibit A.

   a. On or about February 12, 2021, Ronald Lane, Inc., a West Virginia corporation changed its' name to RLI Solutions Company (the Debtor).

   b. Chris Lane is a debtor before this Court in Chapter 11 case, 22-21432-TPA.

(8) On January 29, 2021, pursuant to the Agreement, Chris Lane entered two (2) Promissory Notes with Lane guaranteeing partial payment of the Purchase as follows:

   a. Note A: $3,000,000; See Exhibit B; and
   b. Note B: $2,363,000; See Exhibit C.

(9) On January 29, 2021, pursuant to the Agreement, the Debtor executed a separate Guaranty for both Note A and Note B. See Exhibits D and E.

(10) The *payment* terms and conditions for Note A are as follows:

   "(1)  The principal balance of this Note shall be due, owning and payable in four (4) installments. The first installment shall of Fifty Thousand Dollars ($50,000.00) shall be paid on the Closing Date. The second installment of Seven Hundred Fifty Thousand Dollars (&750,000.00) shall be due and payable on

2

    May 29, 2021; the third installment of One Million Two Hundred Thousand Dollars ($1,200,000.00) shall be due and payable on September 26, 2021; and the final installment of One Million Dollars ($1,000,000.00) Shall be due and payable on January 24, 2022. In the event the principal balance is not paid in full on or before January 24, 2022, Borrower [Christopher Lane] shall be in default of this Note."

    See Exhibit B.

(11) The *default* terms and conditions for Note A, include:

"Upon any of the following events, at the option of the holder of this Note, the entire unpaid balance of the indebtedness evidenced hereby, together with all accrued but unpaid interest thereon at the Default Rate and all other sums or changes due hereunder or secured by or required to be paid by Borrower [Christopher Lane] under any of the Loan Documents (defined below), shall become immediately due and payable:

(a) In the event any installment of Note A is not made when due, Seller [Norman Lane] shall provide Borrower [Christopher Lane] and Guarantor [RLI Solutions Company] written notice of such default and Borrower and Guarantor shall have thirty (30) days from the date of Notice of cure such default. Any failure on the part of the Borrower or Guarantor to make any payment when due and such payment is not cured within thirty (30) days of the date of written notice of default shall be a default hereunder."

    See Exhibit B.

(12) The *payment* terms and conditions for Note B are as follows:

"(1) The sum of Twenty-Two Thousand Eight Hundred Seventeen and 30/100 Dollars ($22,817.30) beginning on the 5th day of February 2022, and a like sum on the same day of each calendar month thereafter, until the 5th day of February 2032, at which time the entire amount of principal debt and interest then remaining unpaid shall be due and payable, said payments to be first applied to interest accrued to date of payment and

3

> the balance to the reduction of the principal debt hereof."

<u>See</u> Exhibit C.

(13)   The *default* terms and conditions for Note B, include:

> "Upon any of the following events, at the option of the holder of this Note, the entire unpaid balance of the indebtedness evidenced hereby, together with all accrued but unpaid interest thereon at the Default Rate and all other sums or changes due hereunder or secured by or required to be paid by Borrower [Christopher Lane] under any of the Loan Documents (defined below), shall become immediately due and payable:
>
> (a)   If Borrower [Christopher Lane] fails to pay any sum required to be paid by Borrower hereunder when due as herein provided and such failure shall upon written notice to the Borrower and Guarantor [RLI Solutions Company] remain unpaid for a period of fifteen (15) days from the date of said written notice."

<u>See</u> Exhibit C.

(14)   Upon the default of either Note A or Note B by Chris Lane and the Debtor both Notes become immediately due and payable. <u>See</u> Exhibits B and C.

(15)   Both Note A and Note B provide that if Lane defaults on the payments, any unpaid balance shall bear interest at a rate of ten percent (10%) per annum from the date of the respective Note, until paid in full. <u>See</u> Exhibits B and C, <u>Interest Rate</u>.

(16)   Both Note A and Note B also provide that if the Lane defaults on the payments, he promises to pay Lane all his costs, "including without limitation, reasonable attorney fees to the fullest extent not then prohibited by applicable law, and all expenses incurred in connection with the protection or realization of any collateral, whether suit is filed hereon or on any instrument granting a security interest." <u>See</u> Exhibits B and C, <u>Costs</u>.

(17)    The Agreement also provides that upon default by Lane of either Note A or Note B they shall be subject to a default rate of interest equal to ten percent (10%) per annum on the unpaid balances.  See Exhibit A, ⊓ 1.2.10 and ⊓ 1.2.11

(18)    On January 29, 2021, pursuant to the Agreement, the Debtor, Lane, and Chris Lane executed a Stock Pledge Security Agreement in which Chris Lane pledged the 5,663 shares of non-voting capital stock as secured collateral to Lane, in the event Chris Lane defaulted on the terms and conditions of the Purchase. See Exhibit F.

(19)    In the Agreement, the Debtor and Chris Lane pledged The Stock Pledge Security Agreement as security to Note A. See Exhibit A.

(20)    In the Agreement, the Debtor and Chris Lane pledged the following real property as security to Note A and Note B as follows:

**Note A:**

a. A first position mortgage in favor of Lane against the property known to the parties as the "Houston Property" and more particularly described as all that certain parcel of land located in North Strabane Township, Washington County, Pennsylvania and of record in the Office of the Recorder of Deeds of Washington County, Pennsylvania, instrument number 201073560 recorder on February 6, 2017.  See Exhibit A;

b. A first position deed of trust in favor of Lane against the property known to the parties as the "Alpaca Property" and more particularly described as the lower one half of the Alpaca Property located in Harrison County, West Virginia and of record in The Office of the Clerk of the County Commission of Harrison County, West Virginia in Deed Book 1617 at Page 15.  See Exhibit A;

c. A second position deed of trust in favor of Lane against the property known to the parties as the "Sun Valley Two Property" and more particularly described as a certain tract of parcel of land situate along Harrison County Route 50/39 (Sun Valley Road), in Coal District, Harrison County, West Virginia, and of record in The Office of the Clerk of Harrison County, West Virginia, Deed Book 1673 at Page 644.  See Exhibit A; and

d. A second position deed of trust in favor of Lane against the property known to the parties as the "Charleston Property" and more particularly described as those certain tracts of parcels of land located in Elk District, Charleston West District, and Charleston North District, Kanawha County, West Virginia, and of

5

    record in The Office of the Clerk of the County Commission of Kanawha County, West Virginia, in Deed Book 2480 at Page 550. <u>See</u> Exhibit A;

**Note B:**

a. A second position mortgage in favor of Lane against the property known to the parties as the "Houston Property" and more particularly described as all that certain parcel of land located in North Strabane Township, Washington County, Pennsylvania and of record in the Office of the Recorder of Deeds of Washington County, Pennsylvania, instrument number 201073560 recorder on February 6, 2017. <u>See</u> Exhibit A;

b. A second position deed of trust in favor of Lane against the property known to the parties as the "Alpaca Property" and more particularly described as the lower one half of the Alpaca Property located in Harrison County, West Virginia and of record in The Office of the Clerk of the County Commission of Harrison County, West Virginia in Deed Book 1617 at Page 15. <u>See</u> Exhibit A;

c. A first position deed of trust in favor of Lane against the property known to the parties as the "Sun Valley Two Property" and more particularly described as a certain tract of parcel of land situate along Harrison County Route 50/39 (Sun Valley Road), in Coal District, Harrison County, West Virginia, and of record in The Office of the Clerk of Harrison County, West Virginia, Deed Book 1673 at Page 644. <u>See</u> Exhibit A; and

d. A first position deed of trust in favor of Lane against the property known to the parties as the "Charleston Property" and more particularly described as those certain tracts of parcels of land located in Elk District, Charleston West District, and Charleston North District, Kanawha County, West Virginia, and of record in The Office of the Clerk of the County Commission of Kanawha County, West Virginia, in Deed Book 2480 at Page 550. <u>See</u> Exhibit A;

(21)    Mr. Lane agreed that upon the occurrence of a default regarding the payment of Note A or Note B, he would not execute upon the secured. pledged shares of the Debtor unless the other collateral securing Note A and Note B were insufficient to satisfy the Default.

(22)    On January 29, 2021, the Debtor executed a Resolution, resolving (a) to accept, assume, grant, and authorize its' president, Chris Lane, the authority to bind the Debtor to the terms, conditions, and obligations of the Purchase and all obligations related to the Purchase, Note A, Note B and any loan documents; (b) to be a Guarantor on Note

A and Note B; and (c) authorizing Chris Lane to execute any documents necessary to encumber the assets of the Debtor in accordance with the Purchase, Note A, Note B, and any loan documents. See Exhibit G.

(23)    Pursuant to the Agreement, the Debtor executed the following (a) Deeds of Trust and Security Agreements, and (b) Mortgage and Security Agreement providing security to both Guaranties and to both Note A and Note B as follows:

   a. **Sun Valley Two Property**:

      i. Tract Two: On January 29, 2021, the Debtor executed:

         1. A Deed of Trust and Security Agreement securing its' obligation to Note B and of record on February 11, 2021, in The Office of the Clerk of Harrison County, West Virginia, Trust Deed Book 1443 at Page 30. See Exhibit H and

         2. A Deed of Trust and Security Agreement securing its' obligation to Note A and of record on February 11, 2021, in The Office of the Clerk of Harrison County, West Virginia, Trust Deed Book 1443 at Page 48. See Exhibit I;

      ii. Tract One: On December 17, 2021, the Debtor executed:

         1. A First Priority Deed of Trust and Security Agreement securing its' obligation to Note B and of record on December 22, 2021, in The Office of the Clerk of Harrison County, West Virginia, Trust Deed Book 1467 at Page 228. See Exhibit J; and

         2. A Second Priority Deed of Trust and Security Agreement securing its' obligation to Note A and of record on December 22, 2021, in The Office of the Clerk of Harrison County, West Virginia, Trust Deed Book 1467 at Page 248. See Exhibit K;

         On the Debtor's Bankruptcy Petition, it values the Sun Valley II's combined tracts at One Million Five Hundred Thousand Dollars ($1,500,000.00).

   b. **Alpaca Property**: On December 17, 2021, the Debtor executed:

    i. A First Priority Deed of Trust and Security Agreement against the property securing the Debtor's obligation to Note A and of record on December 22, 2021, in The Office of the Clerk of Harrison County, West Virginia, Trust Deed Book 1467 at Page 194. <u>See</u> Exhibit L; and

    ii. A Second Priority Deed of Trust and Security Agreement against the property securing the Debtor's obligation to Note B and of record on December 22, 2021, in The Office of the Clerk of Harrison County, West Virginia, Trust Deed Book 1467 at Page 211. <u>See</u> Exhibit M;

    On the Debtor's Bankruptcy Petition, it values the property at $600,000.00.

c. **Houston Property**: On March 17, 2021, the Debtor executed:

    i. A first priority Mortgage and Security Agreement against the property and securing the Debtor's obligation to the Notes and of record on March 19, 2021, in the Office of the Recorder of Deeds of Washington County, Pennsylvania, instrument number 202108260. <u>See</u> Exhibit N; and

    ii. A second priority Mortgage and Security Agreement against the property and securing the Debtor's obligation to the Notes and of record on March 19, 2021, in the Office of the Recorder of Deeds of Washington County, Pennsylvania, instrument number 202108261. <u>See</u> Exhibit O;

    On the Debtor's Bankruptcy Petition, it values the property at Three Million Dollars ($3,000,000.00).

d. **Charleston Property**: On January 29, 2021, the Debtor executed:

    i. A Deed of Trust and Security Agreement against the property and securing the Debtor's obligation to Note B and of record on February 19, 2021, in The Office of the Clerk of Kanawha County, West Virginia, Trust Deed Book 4486 at Page 509. <u>See</u> Exhibit P; and

    ii. A second priority Deed of Trust and Security Agreement against the property and securing the Debtor's obligation to Note A and of record on February 19, 2021, in The Office of the Clerk of Kanawha County, West Virginia, Trust Deed Book 4486 at Page 538. <u>See</u> Exhibit Q;

    On the Company's Bankruptcy Petition, it values the property at Four Million Nine Hundred Thousand Dollars ($4,900,000.00).

(24) In the Agreement, the Debtor and Chris Lane also pledged as security to Note A and Note B, from the "Ron Lane Litigation": (a) up to 50% of any net proceeds recovered, if collected in cash; and (b) any personal or real property recovered. <u>See</u> Exhibit A.

As a result of the "Ron Lane Litigation", Chris Lane recovered the following real property:

    a. "**The Wilsonburg Property**" and more particularly described as that real estate conveyed to Chris Lane by deed from Ronald Lane dated November 17, 2021, and recorded in The Office of the Clerk of the County Commission of Harrison County, West Virginia in Deed Book 1724 at Page 341.

        i. Accordingly, pursuant to the Agreement, on January 29, 2022, Chris Lane executed a Deed of Trust and Security Agreement securing his obligation to both Note A and Note B in the Wilsonburg Property and of record on February 7, 2022, in The Office of the Clerk of the County Commission of Harrison County, West Virginia in Trust Deed Book 1469 at Page 716. <u>See</u> Exhibit R;

        ii. On Lane's Bankruptcy Petition, he values the property at Eight Hundred Fifty Thousand Dollars ($850,000.00).

    b. "**The Shop Property**" and more particularly described as that real estate conveyed to Chris Lane by deed from Ronald Lane dated November 17, 2021, and recorded in The Office of the Clerk of the County Commission of Calhoun County, West Virginia in Deed Book 293 at Page 237.

        i. Accordingly, pursuant to the Agreement, on January 29, 2022, Chris Lane executed a Deed of Trust and Security Agreement securing his obligation to both Note A and Note B in The Shop Property and of record on February 7, 2022, in The Office of the Clerk of the County Commission of Calhoun County, West Virginia in Trust Deed Book 185 at Page 60. <u>See</u> Exhibit S;

        ii. On Lane's Bankruptcy Petition, he values the property at Six Hundred Fifty Thousand Dollars ($650,000.00).

    c. "**The Sun Valley One Property**" property and more particularly described as that real estate conveyed to Chris Lane by deed from Ronald Lane dated November 17, 2021, and recorded in The Office of

the Clerk of the County Commission of Harrison County, West Virginia in Deed Book 1724 at Page 317.

   i. Accordingly, pursuant to the Agreement, on January 29, 2022, Chris Lane executed a Deed of Trust and Security Agreement securing his obligation to both Note A and Note B in the Sun Valley One Property and of record on February 7, 2022, in The Office of the Clerk of the County Commission of Harrison County, West Virginia in Trust Deed Book 1469 at Page 739.  <u>See</u> Exhibit T;

   ii. On Lane's Bankruptcy Petition, he values the property at Three Million Eight Hundred Thousand Dollars ($3,800,000.00).

d. "**The Cairo Property**" property and more particularly described as that real estate conveyed to Chris Lane by deed from Ronald Lane dated November 17, 2021 and recorded in The Office of the Clerk of the County Commission of Ritchie County, West Virginia in Deed Book 392 at Page 249.

   i. Accordingly, pursuant to the Agreement, on January 29, 2022, Chris Lane executed a Deed of Trust and Security Agreement securing his obligation to both Note A and Note B in the Cairo Property and of record on February 7, 2022, in The Office of the Clerk of the County Commission of Ritchie County, West Virginia in Trust Deed Book 238 at Page 339.  <u>See</u> Exhibit U;

   ii. On Lane's Bankruptcy Petition, he values the property at Seventy-Five Thousand Dollars ($75,000.00).

e. "**The Ellenboro Property**" property and more particularly described as that real estate conveyed to Chris Lane by deed from Ronald Lane dated November 17, 2021 and recorded in The Office of the Clerk of the County Commission of Ritchie County, West Virginia in Deed Book 392 at Page 253.

   i. Accordingly, pursuant to the Agreement, on January 29, 2022, Chris Lane executed a Deed of Trust and Security Agreement securing his obligation to both Note A and Note B in the Ellenboro Property and of record on February 7, 2022, in The Office of the Clerk of the County Commission of Ritchie County, West Virginia in Trust Deed Book 238 at Page 322.  <u>See</u> Exhibit V;

   ii. On Lane's Bankruptcy Petition, he values the property at One Million One Hundred Thousand Dollars ($1,100,000.00).

10

(25)  Lane has a security interest in the Debtor's property detailed in Paragraph 20 (a) – (d) based on the two Guaranties; and a security interest in Chris Lane's real property detailed in Paragraph 21 (a) – (e) above based on Note A and Note B.

(26)  Related to Note A and the Guaranty of Note A, Lane has only received one (1) payment totaling One Hundred Thirty-One Thousand Two Hundred Sixty-Six and 50/100 Dollars ($131,266.50) on April 28, 2022, from Chris Lane.

(27)  Related to Note B and the Guaranty of Note B, Lane has received two (2) payments both totaling Twenty-Two Thousand Eight Hundred Seventeen and 30/100 Dollars ($22,817.30) from Chris Lane.  The first payment was received on February 1, 2022, and the second payment was received on February 28, 2022.

(28)  The current balance, including accrued interest, late fees, attorney fees, and related costs owed on Note A and the Guaranty of Note A, through October 12, 2022, is Two Million Six Hundred Thirty-Four Thousand One Hundred Four and 30/100 Dollars ($2,634,104.40). See Exhibit W.

(29)  The current balance, including accrued interest, late fees, attorney fees, and related costs owed on Note B and the Guaranty of Note B is Two Million Four Hundred Seventy-Five Thousand Four Hundred Twenty and 30/100 Dollars ($2,475,420.30). See Exhibit X.

(30)  Based on Chris Lane and the Debtor's bankruptcy petition the total fair

market value listed for all the real property securing Note B and the Guaranty of Note B is Sixteen Million Four Hundred Seventy-Five Thousand Dollars ($16,475,000.00) making Lane an oversecured creditor.[1]

(31)    Accordingly, both the Debtor and Chris Lane have defaulted on the payment terms and conditions provided in both Note A, Note B, and the Guaranties and they are due immediately and payable.

(32)    On April 13, 2021, and October 4, 2021, Lane sent regular first class and certified mail delivery letters to the Debtor, Chris Lane, and their counsel notifying them they were in default of the terms and conditions of Note A and Note B. See Exhibits Y and Z.

(33)    On December 16, 2021, Lane, the Debtor, and Chris Lane conducted a mediation with mediator Joseph Selep, Esq., regarding the defaults on Notes A and B and the Guaranties. The parties entered a Term Sheet in which they provided mutual promises to perform. See Exhibit AA.

(34)    On February 2, 2022, Lane sent regular first class and certified mail delivery letter to the Debtor, Chris Lane, and their counsel notifying them they were in default of the terms and conditions of Note A, Note B, and the Term Sheet. See Exhibits BB.

(35)    On March 22, 2022, Lane filed a civil action in The Circuit Court of Harrison County, West Virginia, against the Debtor and Chris Lane alleging they defaulted on both Note A and the Guaranty to Note A.

(36)    On March 22, 2022, the Circuit Court entered an agreed "Confession of,

---

[1] Pursuant to Bankruptcy Code § 506 (b), as Lane is an oversecured creditor based upon the default provisions in the Agreement, Note A, Note B, and the Guaranties, he is entitled to accrued interest, attorney fees, late fees, and related costs.

Consent to, and Stipulation by Defendants Christopher Lane and RLI Solutions, Inc." (Consent Order) in which the Debtor and Chris Lane both admitted to having breached the respective terms and conditions of Note A and the Guaranty to Note A. See Exhibit CC.

(37) In the Consent Order, the Debtor and Chris Lane confess that:

    a. Lane "has been harmed in the amount of, and is due $2,200,000, plus interest as per the attached Note A.";

    b. Lane is "due a late charge of FIVE PERCENT (5%) for missed payments defined in Note A.";

    c. Lane "is due his reasonable attorney fees in this matter.";

    d. Lane "is due interest of FOUR PERCENT (4%) per annum upon the entry of judgment against Defendants." And

    e. "The enforcement of this Order, including the sequence of property and or security to be executed upon by Plaintiff [Lane], is to be guided by that certain Stock Purchase Agreement signed by the Parties on January 29, 2021."

(38) On August 22, 2022, the Debtor filed his Schedules and on Schedule A listed the real property detailed above. The Debtor valued each piece of real property based either on a 2022 appraisal or its' opinion.

(39) The Debtor does not claim any exemption in the real property listed in its' Schedules.

(40) On Schedule D, the Debtor lists multiple secured creditors with a claim against its' personal property. The Debtor listed the following secured creditors with a claim to its' real property:

    a. Norman Lane
       1714 Mileground Road
       Morgantown, WV 26505
       Debt listed on Schedule: $4,464,131.90

    Note A and Note B guaranties

  b. Oakhurst Income Fund II, LP
    24025 Park Sorrento, Suite 150
    Calabasas, CA 91302
    Debt listed on Schedule: $3,000,000
    The debt was incurred on May 9, 2022 against the Wilsonburg Development

  c. Ronald Lane
    300 Summers St., Ste. 1500
    Charleston, WV 25301
    Debt listed on Schedule: $7,399,346.86
    Unrelated Note A – Mortgage against Ritchie County Dev., 1

(41) Based upon the Debtor's real property valuations in the Schedules, the amount owed to Lane, and the order of execution on secured property pursuant to the Agreement, the Debtor should have equity remaining in unseized real property. However, until Lane forecloses on secured real property, he cannot fully inform the Bankruptcy Court on the amount of any equity in the affected properties. Local Rule 9013-3(a)(12).

(42) Mr. Lane acknowledges that the Houston Property has a lessor making payments to the Debtor. However, the Debtor's admits in its' August 29, 2022, Objection to Motion to Dismiss or Transfer Venue [Docket No. 63] that its' "projected operating income is expected to come from projects located in Pennsylvania", "…the Debtor's business operations in Pennsylvania have increased significantly to the point where a significant portion of its regular income comes from Pennsylvania operations", and "…in the aggregate, most of the Debtor's primary income driving assets are located in the District"; therefore, none of the West Virginia based real property listed in this Motion is needed for the effective reorganization of the Debtor.

## DISCUSSION

(43) Under and pursuant to 11 U.S.C. § 362(a),

14

> "Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title [11 USCS § 301, 302, or 303], or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 [15 USCS § 78eee(a)(3)], operates as a stay, applicable to all entities, of:
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and
>
> (8) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor

15

who is an individual for a taxable period ending before the date of the order for relief under this title."

(44)  Under and pursuant to 11 U.S.C. § 362(d), "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -- (1) for cause, including lack of adequate protection of an interest in property of such party in interest."

(45)  "As a general principle, whether to modify, condition, or annul the bankruptcy stay under section 362(d)(1) is committed to bankruptcy court discretion and is to be determined by examining the totality of the circumstances." In re Nuclear Imaging Sys. Inc., 250 B.R. 724, 730 (Bankr. E.D. Pa. 2000).

(46)  "While section 362(g) imposes upon the party opposing relief from the stay the burden of proof on all issues other than equity, courts generally have recognized that a party seeking relief from the stay has some initial burden to demonstrate 'cause' for relief.": Id.

(47)  "Aside from the statute's inclusive language incorporating lack of adequate protection of an interest in property 'cause' is not defined in the statute, "leaving courts to consider what constitutes cause based on the 'totality of the circumstances in each particular case." Bricker v. Scalera (In re Scalera), 521 B.R. 513, 516 (Bankr. W.D. Pa. 2014).

(48)  "Section 362 (g) of the Bankruptcy Code provides that in hearings brought under §362(d) requesting relief from stay, the requesting party has the burden of proof on the issue of debtor's equity in property, whereas the party opposing relief has the burden of proof on all other issues." Scalera at 317.

16

(49) "Despite this reading, courts, including this Court, have previously held that, with respect to 'all other issues' an initial burden is placed on the requesting party to make a *prima facie* showing of cause sufficient to support the party's request for relief from stay. If a *prima facie* case is shown, the burden then shifts to the party opposing relief to show lack of cause to grant relief from stay." Id.

(50) In relevant part, both Note A and Note B provide that:

> "Upon any of the following events, at the option of the holder of this Note, the entire unpaid balance of the indebtedness evidenced hereby, together with all accrued but unpaid interest thereon at the Default Rate and all other sums or changes due hereunder or secured by or required to be paid by Borrower [Christopher Lane] under any of the Loan Documents (defined below), shall become immediately due and payable:"

See Exhibits B and C.

(51) In the Consent Order, the Debtor confessed to breaching the terms and conditions of the Guaranty to Note A related to the payments owed to Lane. Therefore, the entire balance owed under Note A and the Guaranty to Note A, is immediately due and payable. Accordingly, the Debtor's own admissions forms the totality of circumstances that this Court needs to consider related to the Guaranty to Note A and establishes Lane's prima facie showing of cause. Consequently, this Court should grant Lane's motion for relief and terminate the provisions of the automatic stay for cause so that he can execute upon the property securing the Guaranty to Note A as guided by the Agreement.

(52) Pursuant to the Guaranty to Note B, the Debtor agreed to pay Lane pursuant to the terms and conditions provided in Paragraph 12 above. However, to date neither the Debtor nor Chris Lane have made the required payments to Lane pursuant to

Note B and the Guaranty to Note B. Therefore, as provided in Paragraph 13 above, the Debtor has defaulted on and breached the terms and conditions of the Guaranty to Note B, and the entire balance is immediately due and payable.

Accordingly, based upon the Debtor's default of the payment terms and conditions forms the totality of circumstances that this Court needs to consider related to the Guaranty of Note B and establishes Lane's prima facie showing of cause. Consequently, this Court should grant Lane's motion for relief and terminate the provisions of the automatic stay for cause so that he can execute upon the property securing the Guaranty Note B as guided by the Agreement.

Wherefore, Norman Lane prays that this Court enter an order decreeing that:

(1) Pursuant to 11 U.S.C. § 362 (a) and 11 U.S.C. § 362 (d), the provisions of the automatic stay are hereby terminated solely related to the claims of Norman Lane and permit him to exercise his rights and remedies pursuant to and guided by the Stock Purchase Agreement and the respective Mortgage and Deeds of Trusts related to the security pledged as collateral by the Debtor to the Guaranties of Note A and Note B, and take any other action permitted under and/or pursuant to applicable non-bankruptcy law; and

(2) The stay provided by Bankruptcy Rule 4001(a)(3) is waived, and the order shall be effective upon entry.

Submitted by counsel for Norman Lane,

/s/ David M. Jecklin
David M. Jecklin, Esq. (PA Bar No. 317254)
Gianola, Barnum & Jecklin, L.C.
1714 Mileground Road
Morgantown, WV  26505
Phone: 304-291-6300
Fax: 304-291-6307

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| *In re:* | § § | |
| RLI SOLUTIONS COMPANY | § § | CASE NO. 22-21375-TPA |
| Debtor, | § § | Chapter 11 |
| NORMAN LANE, | § § | |
| Movant, | § § | |
| vs. | § § | |
| RLI SOLUTIONS COMPANY, | § § | |
| Respondent. | § | Document No. |

**CERTIFICATE OF SERVICE**

I, David M. Jecklin, Esq., hereby certify that on the 12th day of October 2022, I electronically filed the foregoing Motion of Norman Lane for Relief from the Automatic Stay with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

/s/ David M. Jecklin
David M. Jecklin, Esq. (PA Bar No. 317254)
Gianola, Barnum & Jecklin, L.C.
1714 Mileground Road
Morgantown, WV  26505
Phone:  304-291-6300
Fax: 304-291-6307